In re CHENEY.

(District Court, D. Massachusetts. July 3, 1924.)

No. 25808.

Bankruptcy ⬅482(1)—Allowance of counsel fees for services rendered in suit by trustees.

Counsel for creditors on whose insistence a suit was brought by the trustee, in which a large sum was realized for the estate, and in which they rendered valuable services, are entitled to as liberal payment therefor as is consistent with the policy of the Bankruptcy Act; but, where the only question involved was the construction of a will, the allowance should be no more than would be reasonable on a petition by an executor or trustee for a construction of the will.

In Bankruptcy. In the matter of Benjamin P. Cheney, bankrupt. On review of orders of referee fixing counsel fees. Modified.

William D. Turner, of Boston, Mass., for trustees.

Joseph A. Locke, of Boston, Mass., and Francis P. Maguire, for creditors.

MORTON, District Judge. These are proceedings to review orders of the referee fixing counsel fees. The basic facts as stated in his certificate are accepted by all parties. It appears that the bankrupt had an interest in a trust fund established under the will of his father, B. P. Cheney, Sr., who died nearly 30 years ago. Counsel for the trustee in bankruptcy carefully considered whether any part of this interest belonged to the estate. He was of opinion that, except to a limited extent, it did not, and he took the opinion of other counsel upon the point, which was the same as his own. Messrs. Wales, Maguire and Locke, who were counsel for certain creditors, took a different view of the matter and urged that proceedings be instituted by the trustee for the purpose of obtaining a larger interest in the fund. The suggestion had been previously made by Mr. Horblit. The trustee's counsel, holding pretty firmly to his own view, declined to institute such proceedings.

There was a conference before Referee Gibbs, at which it was finally arranged that proceedings would be instituted by the trustee, in deference to the opinion of the counsel for creditors, and that those counsel would assist the trustee as associate counsel in the proceedings. The referee made it plain that they would not be paid more than nom-

_____

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

inal compensation if their views did not prevail. On this understanding they went at the case with much interest and ability.

A bill in equity was drafted and filed in the Supreme Judicial Court; a demurrer to it was argued both before a single justice, and before the full court, and was overruled. Forbes v. Snow, 239 Mass. 138, 131 N. E. 299, 16 A. L. R. 546. The case was then heard before a special master and the usual proceedings followed upon the coming in of his report. It then went a second time to the full court, by which it was decided, to a large extent, as the counsel for creditors had contended. Forbes v. Snow, 245 Mass. 85, 140 N. E. 418.

The result of the litigation was to establish for the estate an interest in the trust fund, out of which the estate has realized upwards of $800,000. There was a good deal of friction between the trustee and the associate counsel during the proceedings, which increased the amount of time required and the difficulty of doing the work. The relations became so strained that, about the time when the master's report came in, the trustee definitely discharged Messrs. Locke and Maguire as his associate counsel, and went on with Mr. Wales alone in that capacity. Messrs. Locke and Maguire, however, continued to take an interest in the case, and by leave of court filed a brief as amici curiæ. There can be no doubt, I think, that the establishment of the estate's right to the fund was to a large extent due to the zeal displayed by the counsel for creditors, whose fees are now in question.

The learned referee allowed Mr. Wales $22,500, Mr. Maguire and Mr. Locke jointly (they having requested a joint allowance) $40,000, and Mr. Turner for his services in this litigation $10,000. Mr. Wyman, who by purchase and assignment of claims is a creditor to an amount of about $600,000, and other creditors, object to these allowances. It is a matter on which the decision of the referee, under whose direction the estate was administered and who was familiar with the matter, carries much weight; the question being whether upon the facts stated in his certificate his allowances were plainly excessive.

The litigation involved only the construction of a written instrument, viz. the will of B. P. Cheney, father of the bankrupt; no testimony was taken and the record on which the case was decided contained only such documents and papers as would naturally be required for the decision of such a question. Such cases call for much ability in analysis, in knowledge of law, and in method of presentation; but they do not make such demands upon the time of counsel as heavy cases involving disputed issues of fact which are tried on the facts. The proceedings in which the services in question were rendered resembled in substance a petition by an executor or trustee for instructions as to the meaning and effect of a will; but they were more difficult and sharply contested than is usual in such petitions. The fees of counsel ought to be fixed accordingly, having due regard to the fact that they acted on the understanding with the referee that they would be allowed only nominal compensation if they were not successful, and to the further fact that their work was increased by the sceptical attitude of the trustee's counsel and the disagreements which arose between him and them.

The learned referee seems to have regarded the matter as one in which a sharply contested and doubtful claim to property had been

won by the estate through the efforts of these counsel; and he seems to have paid comparatively slight attention to the fact that Messrs. Wales, Locke, and Maguire, in insisting upon proceedings by the trustee, were acting for creditors and presumably being paid by their clients for that service. This was in substance the view of the trustee in bankruptcy, Mr. Forbes, who said to the referee that in his judgment total fees aggregating not more than 10 per cent. of the amount of the fund coming to the estate would not be excessive. The referee relied much on this statement in reaching his conclusions. These views—in which I am unable to concur—led the learned referee to make allowances which, in my opinion, are plainly too large. The counsel concerned should be liberally paid on about the same scale as that which would prevail between counsel and client on a petition for instructions, increased by the contingency under which they accepted the work and the difficulties under which they did it. It is in the interest of good administration in bankruptcy that lawyers who display such interest, energy, and ability on behalf of estates as were here shown should be well paid, so that, as has been said in salvage cases, if circumstances should repeat they would again undertake the work. But the extraordinary rewards for brilliantly successful results, which are often willingly paid by individual clients, cannot be expected or allowed from estates in bankruptcy.

Applying these views, it will be necessary greatly to reduce the allowance of the learned referee, because they were made on what seems to me to have been a radically wrong basis. I allow Mr. Wales $7,500, and Messrs. Maguire and Locke jointly $14,000. The allowance of $10,000 to Mr. Turner is not objected to by Mr. Wyman, although it is objected to by other parties. It may be affirmed, on the understanding that $7,000 of it will be applied in settlement of his services in these proceedings and the balance on his general bill against the estate.

Mr. Horblit also claimed counsel fees. His claim was denied in toto by the referee, and is the subject of a separate proceeding in the review. Both proceedings are covered by the same certificate. At the hearing before me, on motion of Mr. Horblit, I directed that the transcripts of the testimony taken before the referee bearing upon his claim, and certain letters which he then produced, should be treated as forwarded by the referee and as constituting part of his certificate; and they have been so considered. They do not, in my opinion, disclose any sufficient reason for modifying the referee's findings of fact, nor for disagreeing with his conclusion with regard to this claim. It is disallowed.

Ordered accordingly.